# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Dale Erickson, Diane Erickson,                    Civil No. 09-3044 (DWF/JJG)
and Dustin Erickson,

              Plaintiffs,

v.                                                **MEMORANDUM**
                                                  **OPINION AND ORDER**

Messerli & Kramer P.A.,

              Defendant.

_____

Thomas J. Lyons, Esq., Lyons Law Firm, P.A., and Trista M. Roy, Esq., Consumer Justice Center PA, counsel for Plaintiffs.

Amanda E. Prutzman, Esq., Eckberg, Lammers, Briggs, Wolff & Vierling, P.L.L.P.; Derrick N. Weber, Esq., and Jennifer M. Zwilling, Esq., Messerli & Kramer PA; and Truman W. Schabilion, Esq., Stein & Moore, P.A, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Partial Summary Judgment as to Defendant's Liability for Violations of the Fair Debt Collections Practices Act, and Defendant's Motion for Partial Summary Judgment. For the reasons set forth below, the Court grants in part and denies in part both motions.

## BACKGROUND

In 2002, Dale Erickson was issued a credit account from FIA Card Services, N.A. ("FIA"). (Aff. of Jennifer Zwilling in Supp. of Def.'s Mot. for Partial Summ. J. ("Zwilling Supp. Aff.") ¶ 3.) Dale Erickson used the account and eventually defaulted on

the account on or about December 1, 2008.  (*Id.* ¶ 4.)[1]  When Dale Erickson defaulted, he

owed a principal balance of $33,372.00 to FIA.  (*Id.* ¶ 5.)  FIA placed Dale's account

with Defendant Messerli & Kramer, P.A. for collection.  (*Id.* ¶ 6; Aff. of Trista M. Roy

("Roy Aff.") ¶ 6, Ex. E (Dep. of Jason Henning ("Henning Dep.") at 24-25).)  In

attempting to collect the debt, Defendant's former agent, Daniel Dieser, placed several

calls to Plaintiffs' residence.  (Henning Dep. at 25-27.)  The debt was unable to be

resolved and Defendant commenced suit.  (Zwilling Supp. Aff. ¶ 8.)  Judgment by default

was entered on November 10, 2009.  (*Id.* ¶ 9.)

The calls relevant to this proceeding include voice messages left on Dale and

Diane Erickson's home answering machine on September 2 and September 11, 2009, and

four phone conversations that are described below.[2]

> *August 26, 2009 phone conversation between Defendant's agent and Diane Erickson*

| | |
|---|---|
| Diane: | Hello. |
| Dan: | Hi. Can I speak to Dale? |
| Diane: | No, he isn't here. |
| Dan: | Is this his wife? |
| Diane: | Huh? |
| Dan: | Are you his wife? |
| Diane: | No, I'm not. |
| Dan: | Okay. |

---

[1]     Plaintiffs assert that they began to experience financial difficulties after Diane Erickson, who has Multiple Sclerosis, became disabled and unable to work.

[2]     The audio recording of these phone calls was provided to the Court.  Both parties have transcribed portions of the audio recordings in their briefs with a few differences. The Court has listened to the recordings and has attempted to transcribe them as accurately as possible.  The Court will note any material differences.

| Diane: | Can I take a message? |
| Dan: | Yeah, this is Dan Dieser with Messerli & Kramer law firm. |
| Diane: | Yeah. |
| Dan: | Do you have a pen and paper handy? |
| Diane: | Ah, no I don't. |
| Dan: | Ma'am . . . |
| Diane: | Hold on a minute.  [Pause.] Okay.  What is this concerning? |
| Dan: | Well, if you were his wife, I could speak to you. |
| Diane: | What? |
| Dan: | If you were his wife, I could speak to you about it. |
| Diane: | Is it something to do with a credit card? |
| Dan: | [unclear] |
| Diane: | Ah, he's got an attorney.  He told me to have you call him. |
| Dan: | Okay. |
| Diane: | If you have any issues with him. |
| Dan: | Well, have him give me a call and I'll – |
| Diane: | No. This is the number.  Do you want it? |
| Dan: | No. I want him to call and give me the number. |
| Diane: | Well, you'll probably never hear from him. |
| Dan: | Okay.  Well, then that's unfortunate for him. |
| Diane: | Well, whatever. |

(Roy Aff. ¶ 2, Ex. A; Henning Dep. at 33-34.)

*September 3, 2009 phone conversation between Defendant's agent and Diane Erickson*

| Diane: | Hello? |
| Dan: | Hi. Can I speak to Dale Erickson, please? |
| Diane: | No, he isn't here. |
| Dan: | Are you his wife? |
| Diane: | What? |
| Dan: | Are you his wife? |
| Diane: | Yes, I am. |
| Dan: | Ok, Mrs. Erickson, I'm calling about the Bank of America account. |
| Diane: | Yeah. |
| Dan: | The money you guys owe on it is $32,000. |
| Diane: | Here. Here's the number. You can call our attorneys. |
| Dan: | Yes. |
| Diane: | Our attorney number is . . . . Do you have a paper? |
| Dan: | What is your attorney's name? |
| Diane: | Everhart.  Everhart – |

| | | |
|---|---|---|
| Dan: | Uh-huh. |
| Diane: | . . . law Firm. |
| Dan: | Oh, they're a consumer credit? |
| Diane: | What? |
| Dan: | They're a consumer credit place? |
| Diane: | Yeah. |
| Dan: | They're not going to be able to help you out, you know? |
| Diane: | No, I don't care.  Here— |
| Dan: | You don't care? |
| Diane: | Here—do you want the number or not? |
| Dan: | You know what, I think we'll just . . .[3] |
| Diane: | Hey, wait.  Don't call us anymore! |
| Dan: | I'm going to continue to call. |
| Diane: | No!  You cannot call us . . . |

(Roy Aff. ¶ 2, Ex. A; Henning Dep. 38-39.)

*September 15, 2009 phone conversation between Defendant's agent and Dustin Erickson*

| | | |
|---|---|---|
| Dustin: | Hello. |
| Dan: | Hi, can I speak to Dale Erickson? |
| Dustin: | Uh, he's not around. |
| Dan: | Okay, and who would I leave this message with? |
| Dustin: | Dustin. |
| Dan: | Dustin? Is Dale your dad? |
| Dustin: | Yeah. |
| Dan: | You know where I can get ahold of him? |
| Dustin: | Uh, no I do not, he's out of town – why what's up? |
| Dan: | Well I need to get a hold of him really badly – I'm with Messerli & Kramer law firm. |
| Dustin: | Okay. |
| Dan: | Do you have his cell number? |
| Dustin: | Uh, no I do not . . . it's not on me currently. |
| Dan: | Well are you able to look it up? |

---

[3]     While the recording is not clear, Plaintiffs contend that at this point in the conversation, Defendant's agent said "You know what, I think we'll just . . . sue you out."  For purposes of considering Defendant's motion for summary judgment, the Court will assume that Plaintiffs' version of the phone call is correct.

| | |
|---|---|
| Dustin: | No… what is this?  I'd have to call you back or you'd have to call back or something . . . Why? What's up though?  You need to get a hold of him for what – law firm? |
| Dan: | For Messerli & Kramer law firm. |
| Dustin: | For what, a crime? |
| Dan: | Well, did I say that? |
| Dustin: | No but . . . |
| Dan: | I need to get a hold of him, though. |
| Dustin: | Okay uh, well it seems like that's your problem then . . . I don't know … call back next week, I don't know what to tell you.  He's out of town. |
| Dan: | Well actually it's going to be your dad's problem. |
| Dustin: | What? |
| Dan: | It's going to be your dad's problem. |
| Dustin: | Why? |
| Dan: | Why? |
| Dustin: | Yeah. |
| Dan: | Why don't you ask him? |
| Dustin: | Well what did he do, steal something? |
| Dan: | Why don't you ask him? |
| Dustin: | Okay.  Ask him what?  Okay.  Criminal what law firm? |
| Dan: | I said I'm with Messerli & Kramer law firm. |
| Dustin: | Okay Messily . . . Messily & Kramer law firm . . . |
| Dan: | Messerli spelled M-e-s-s-e-r-l-i. |
| Dustin: | Okay. |
| Dan: | So you can ask all those questions. |
| Dustin: | Okay – you can't tell me or what? |
| Dan: | No. |
| Dustin: | Alright then if he – probably, if he wants to get a hold of you then I'm sure he will, but uh . . . |
| Dan: | Oh he will eventually. |
| Dustin: | Ah yeah I appreciate – I don't appreciate the threats . . . so. |
| Dan: | I don't appreciate you not helping me out. |
| Dustin: | Well, fuck.  You should come here and say that to my face.. . |
| Dan: | Why don't you come over here and say that? |
| Dustin: | Alright where are you at?  I'll fuckin' drive there right now. |
| Dan: | Alright – you got a pen and paper handy? |
| Dustin: | Yeah. |
| Dan: | 3033 Campus Drive. |
| Dustin: | Okay. |
| Dan: | Suite 250.  This is my number you give me a call when you're at the door. |
| Dustin: | Okay bye. |

| Dan: | 577 |
|------|-----|
| Dustin: | Alright. |
| Dan: | You don't want it? |
| Dustin: | What? |
| Dan: | You don't want it? |
| Dustin: | What, I said, I got your address, you said give me a call. |
| Dan: | I said I give you the number when you're there I'll come out and meet you. |
| Dustin: | This is, I thought this is your number? |
| Dan: | What is it? |
| Dustin: | It's 1-800-577 something, something, something, something – it's on the caller ID. |
| Dan: | Ok. |
| Dustin: | Alright I'll fuckin' call you when I get there buddy . . . |
| Dan: | Get there buddy . . . |

(Roy Aff. ¶ 2, Ex. A; Roy Aff. ¶ 9, Ex. H (Dep. of Dustin Erickson ("Dustin Dep.") at

21.)

*September 28, 2009 phone conversation between Defendant's agent and Dale Erickson*

| Dale: | Hello. |
|-------|--------|
| Dan: | Hi, Dale? |
| Dale: | Yeah. |
| Dan: | This is Dan Dieser with Messerli & Kramer law firm.  How are you doing today? |
| Dale: | I'm doing just fine. |
| Dan: | Good.  Say, I'm calling you in regards to that Bank of America account. |
| Dale: | Yeah.  I'm well aware of it, dude. |
| Dan: | Okay.  Well, the whole thing is is that you have an outstanding balance of $33,000 . . . |
| Dale: | I know how much my outstanding balance is. |
| Dan: | What is your intention on resolving that, Dale? |
| Dale: | I . . . call my attorney. |
| Dan: | Okay.  Who is your attorney then? |
| Dale: | It's . . . it is . . . um . . . Robert Evenhart. |
| Dan: | How do you spell Evenhart? |
| Dale: | E-V-E-R-H-A-R-T. |
| Dan: | Okay.  And what's the phone number? |
| Dale: | [redacted] |

| Dan: | And, uh, are you filing Chapter 7, or . . . . |
|---|---|
| Dale: | I have no idea.  Just talk to him about it. |
| Dan: | Are you going to file bankruptcy? |
| Dale: | Talk to him about it. |
| Dan: | I'm asking you. |
| Dale: | I have no idea.  That's why I hired an attorney. |
| Dan: | Okay. All right. |
| Dale: | All right. |
| Dan: | Thanks. |

(Roy Aff. ¶ 2, Ex. A; Dale Dep. 86-87.)

Plaintiffs filed their initial Complaint in this action on October 30, 2009, asserting

two causes of action—violations of the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692, *et seq.* ("FDCPA"), and a claim for invasion of privacy.  On October 18, 2010,

Plaintiffs filed an Amended Complaint asserting the same two causes of action.[4]

Plaintiffs claim that they have suffered mental distress as a result of Defendant's actions

and that they are entitled to recover damages pursuant to 15 U.S.C. § 1692k(a)(1).

Plaintiffs also request statutory damages, costs, and attorney fees pursuant to 15 U.S.C.

§§ 1692k(a)(2)(A) & 1692k(a)(3).

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and

the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The

---

[4]     Defendant asserts that Plaintiffs made several untruthful allegations in their original complaint and gave testimony during discovery that misrepresented the nature of Defendant's communications with Plaintiffs.  Defendant asserts that audio recordings of the contested phone calls revealed the falsity of many of Plaintiffs' statements.  While the fact that Plaintiffs may have made untruthful statements about Defendant's conduct does not affect the outcome of the present motions, the perceived veracity of Plaintiffs' allegations and prior testimony may play a significant role before a jury.

Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"The purpose of the FDCPA is 'to eliminate abusive debt collection practices by debt collectors, [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 318-19 (8th Cir. 2004) (quoting 15 U.S.C. § 1692(e)). Under the FDCPA, in their activities in connection with the collection of a debt, debt collectors are forbidden from (1) using conduct that constitutes harassment, oppression or abuse; (2) using false, deceptive or misleading misrepresentations; and

(3) engaging in unfair or unconscionable means.  *See* 15 U.S.C. §§ 1692d, 1692e, and 1692f.

In particular, the FDCPA prohibits debt collectors from engaging "in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. 1692d.  "Harassment" includes, for example, threats of violence, use of obscene language, use of public shaming, and coercion.  *Id*. at subds. (1)-(4).  In addition, the FDCPA prohibits the use of false or misleading means in connection with the collection of a debt.  Specifically,

> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> . . .
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .
>
> (7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e.  Finally, § 1692f  prohibits the use of "unfair or unconscionable

means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.

The Eighth Circuit has instructed district courts to employ an

"unsophisticated-consumer" standard when analyzing FDCPA claims.  *See, e.g., Duffy v.

Landberg,* 215 F.3d 871, 873 (8th Cir. 2000).  This standard is "designed to protect

consumers of below average sophistication or intelligence without having the standard

tied to the very last rung on the sophistication ladder."  *Strand,* 380 F.3d at 317

(quotations omitted).  Hence, the unsophisticated-consumer standard "protects the

uninformed or naive consumer" but also includes "an objective element of

reasonableness," which ensures that debt collectors remain free "from liability for

peculiar interpretations of collection letters."  *Strand,* 380 F.3d at 318.

In their motion, Plaintiffs assert that they are entitled to summary judgment with

respect to their claims against Defendant for continuing to make phone calls to Plaintiffs

after they notified Defendant that Dale Erickson was represented by an attorney, for

continuing to make phone calls after Plaintiffs verbally directed Defendant to stop

calling, for liability based on Defendant's September 15, 2009 phone call to Dustin

Erickson, and for liability based on Defendant's September 3, 2009 phone call to Diane

Erickson.  In its motion, Defendant asserts that it is entitled to summary judgment with

respect to Plaintiffs' claim that Defendant continued to call despite knowing that Dale

Erickson was represented in the underlying collection matter, Defendant's

communications with Dale and Diane Erickson, Defendant's communications to

Plaintiffs' residence, and Plaintiffs' emotional distress claims.  The Court discusses the claims and issues relevant to both parties' motions below.

## I.      Calls Made After Knowledge of Attorney Representation

Plaintiffs assert that Defendant violated §§ 1692c(a)(2) and 1692b(6) by communicating with Plaintiffs after Plaintiffs gave notice that Dale Erickson was represented by an attorney.  In particular, Plaintiffs assert that on April 23, 2009, Plaintiffs Dale and Diane Erickson retained the services of a bankruptcy attorney, Robert Everhart.  (Roy Aff. ¶ 4, Ex. C.)  Plaintiffs further assert that Defendant was put on notice that Dale Erickson was represented by an attorney during the phone conversation that took place between Diane Erickson and Defendant on August 26, 2009.  Plaintiffs argue that Defendant's subsequent phone calls and voice messages (made or left on September 2, 3, 11, 15, and 28) all violate the FDCPA as a matter of law.

Section 1692c(a)(2) provides in part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, . . .

15 U.S.C. § 1692c(a)(2).  In addition, § 1692b(6) provides in part:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall—
>
> . . .
>
> after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such

attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 U.S.C. § 1692b(6).

The record demonstrates that on August 26, 2009, Diane Erickson told Defendant that Dale Erickson had retained an attorney.  (Roy Aff. ¶ 2, Ex. A.)  The record also demonstrates that Diane Erickson attempted to give the attorney's phone number to Defendant, but Defendant did not take it.  (*Id.*)  Despite being put on notice that Dale Erickson was represented by an attorney, however, Defendant argues that it was not required to cease communication with Plaintiffs because that attorney did not represent Plaintiffs with respect to the underlying FIA debt.  In support of its argument, Defendant cites to the Retainer Agreement between Dale and Diane Erickson and Robert Everhart. The Retainer Agreement, which was executed on April 23, 2009, reads in part:

### MINNESOTA BANKRUPTCY AGREEMENT

This agreement acknowledges the fee arrangement by which EVERHART LAW OFFICE, LTD will represent Dale W. and Diane M. Erickson client(s) in connection with Chapter 7 Bankruptcy.  The attorney agrees to meet with the client(s), prepare the client(s) bankruptcy petition, lists and schedules, represent the client(s) at the first meeting of creditors, negotiate for and advise client(s) on the effect of any reaffirmation agreement for the following fee . . .

(Roy Aff. ¶ 4, Ex. C; Aff. of Jennifer Zwilling in Supp. of Def.'s Response to Pls.' Mot. for Summ. J. ("Zwilling Opp. Aff.") ¶ 3, Ex. A.)  The Retainer Agreement clearly provides that Robert Everhart was being retained by the Ericksons to represent them in connection with their Chapter 7 Bankruptcy.  Defendant, however, points out that the Retainer Agreement does not specifically indicate that Robert Everhart agreed to

represent the Ericksons with respect to the underlying debt or any related alleged collection harassment. Despite this, Plaintiffs maintain that Dale and Diane Erickson retained the services of attorney Robert Everhart for purposes of debt consultation, ceasing of creditor and collection harassment, and exploration of bankruptcy options.

The Court concludes that fact issues remain with respect to Plaintiffs' claims under §§ 1692c(a)(2) and 1692b(6) and that neither party is entitled to summary judgment. While the Retainer Agreement is relevant evidence of the scope of Robert Everhart's representation, the record is not clear as to whether the Ericksons and Everhart had an understanding that Everhart would be representing Dale Erickson with respect to the underlying FIA debt. Therefore, the Court denies both Plaintiffs' and Defendant's motions with respect to Plaintiff's claims under §§ 1692c(a)(2) and 1692b(6).[5]

## II.     Phone Conversations with Diane and Dale Erickson

Plaintiffs assert that the substance of the August 26, 2009 and September 3, 2009 phone calls to Diane Erickson and the September 28, 2009 phone call to Dale Erickson violate various provisions of the FDCPA. For example, Plaintiffs assert that the September 3, 2009 phone call to Diane Erickson violated the FDCPA because Defendant

---

[5]     Defendant also cites to a recorded conversation during which Robert Everhart stated that he was not representing Plaintiffs in the underlying collection matter (*see* Zwilling Supp. Aff. ¶ 19), and Dale Erickson's deposition testimony wherein he states that Everhart represented him in bankruptcy and not the "individual underlying case." (*Id.* ¶ 14, Ex. C (Dep. of Dale Erickson ("Dale Dep.") at 67).) This evidence demonstrates that Everhart does not represent Plaintiffs in the present lawsuit (a fact which is not disputed), but is not determinative of whether Everhart represented Dale Erickson with respect to the FIA debt at the time of the alleged FDCPA violations.

engaged a non-debtor, accused Diane Erickson of being partly responsible for her husband's debt, refused to listen to and spoke over her, told her that her attorney was not going to help her out,[6] and stated "I think we'll just sue you out."

Viewing the record in the light most favorable to Plaintiffs, the Court concludes that no reasonable juror could conclude that the substance of the September 3 phone call was harassing, abusive, or oppressive.  There is no evidence that Defendant threatened violence, used obscene language, or otherwise harassed or abused Diane Erickson during this call.  Nor is there evidence that Defendant used any false or misleading means or otherwise acted unfairly or unconscionably so as to violate the FDCPA.  Likewise, the Court concludes that no reasonable juror could conclude that the substance of the August 26 and September 28 phone calls violate the FDCPA.

Plaintiffs also assert that calls placed after the September 3, 2009 phone call, during which Diane Erickson exclaimed "Don't call us anymore! . . . No! You cannot call us . . ." violate the FDCPA for failure to cease calling in violation of §§ 1692d and 1692d(5).  (Roy Aff. ¶ 2, Ex. A.)  The Court disagrees and dismisses this claim as a matter of law.  In order to constitute a cease demand under the FDCPA, the demand must be in writing.  *See* § 1692c(c) ("If a consumer notifies a debt collector in writing that . . . the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with

---

[6]     The record reflects that Defendant's agent stated that the "consumer credit place" would not help Plaintiffs out.

respect to such debt . . .").  Here, there is no evidence that Plaintiffs ever made a written

demand that Defendant cease communication.  The Court acknowledges that Plaintiffs

have not brought claims under § 1692c(c), but instead argue that Diane's verbal directive

not to call anymore violated §§ 1692d and 1692d(5).  However, Plaintiffs have failed to

put forth any basis for finding that Defendant's failure to heed Diane Erickson's verbal

demand to stop calling constitutes a violation of the FDCPA.[7]

For the above reasons, the Court concludes that the August 26, 2009,

September 3, 2009, and September 28, 2009 phone calls do not violate §§ 1692d, 1692e,

or 1692f.

## III.    Defendant's Phone Call with Dustin Erickson

Plaintiffs assert that Defendant's September 15, 2009 phone conversation with

Dustin Erickson violated several provisions of the FDCPA.  Plaintiffs argue that this

phone call violated the FDCPA in the following ways:  (1) attempting to add an element

of intimidation and a false sense of urgency in violation of §§ 1692b(1), 1692d, 1692e,

and 1692e(10) by keeping Dustin Erickson on the phone and interjecting that he was

calling on behalf of a law firm; (2) by giving Dustin Erickson enough information to

cause him worry and concern, but doing nothing to clear up Dustin Erickson's belief that

---

[7]       In particular, § 1692d(5) prohibits "[c]ausing a telephone to ring or engaging any
person in telephone conversation repeatedly or continuously with intent to annoy, abuse,
or harass any person at the called number."  The record establishes that Defendant placed
at most ten calls to Plaintiffs' residence from August 11, 2009, through
September 28, 2009.  The Court concludes that no reasonable juror could conclude that
Defendant violated § 1692d(5) by placing these calls.

his father was in legal trouble or had committed a criminal act, in violation of §§ 1692d, 1692e, 1692e(7), and 1692e(10); (3) by falsely representing the urgency of the call and attempting to harass and intimidate Dustin Erickson by stating "oh he will eventually," and by personally insulting Dustin Erickson by stating "I don't appreciate you not helping me out," in violation of §§ 1692d, 1692d(2), 1692e, 1692e(4), and 1692e(10); and (4) by encouraging Dustin Erickson to engage in a face-to-face confrontation, in violation of §§ 1692d, 1692d(1), 1692d(2), 1692e, and 1692e(5).

The Court concludes that Plaintiffs are entitled to summary judgment with respect to their claim that Defendant violated the FDCPA by encouraging Dustin Erickson to meet him to engage in a face-to face confrontation.  Section 1692d(1) specifically prohibits the use or threat of use of violence in connection with the collection of a debt. No reasonable juror could conclude that asking or encouraging Dustin Erickson to come to where Defendant was located to engage in an altercation was not a threat of violence. However, with respect to the remaining portions of the phone call between Defendant and Dustin Erickson, the Court concludes that fact issues exist as to whether the call rises to the level of violating additional portions of the FDCPA.

## IV.    Bona Fide Error

Defendant argues that to the extent that any FDCPA claims survive summary judgment, and particularly with respect to Defendant's phone call with Dale Erickson, Defendant is protected under the bona fide error provision of the FDCPA.  Plaintiffs disagree and assert that Defendant cannot satisfy its burden under this error provision.

Section 1692k(c) provides an exception to FDCPA liability for unintentional violations that "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  To demonstrate a bona fide error under the FDCPA, "a debt collector must prove by a preponderance of the evidence that its FDCPA violation was unintentional and was caused by an objectively bona fide error (i.e., one that is plausible and reasonable) made despite the use of procedures reasonably adapted to prevent that specific error."  *Wilhelm v. Credico, Inc.,* 519 F.3d 416, 420 (8th Cir. 2008).

Here, Defendant asserts that any FDCPA violations were unintentional and resulted from a bona fide error despite the maintenance of procedures reasonably adapted to avoid such errors.  Defendant cites to procedures such as training newly hired employees to comply with the FDCPA, conducting annual FDCPA review courses, supervising employees, and training employees to consult with supervisors when situations arise.  Defendant contends that as a part of this training, it trains its agents to speak in an appropriate manner to all parties and maintains a strict policy of updating a file with attorney information once it becomes known that an attorney represents a debtor.  Defendant also contends Defendant's former agent, Dan Dieser, was subject to these procedures.

The Court concludes that Defendant has failed to present sufficient evidence to support, at the summary judgment stage, a finding that any violations of the FDCPA resulted from a bona fide error.  Similarly, Plaintiff has failed to provide sufficient support to justify the dismissal of the bona fide error defense at the summary judgment

stage.  Whether or not Defendant is protected by the bona fide error defense involves

questions of fact to be decided at trial and/or further briefing at the motion in limine

stage.

## V.      Emotional Distress Damages

In their Amended Complaint, Plaintiffs seek actual damages for emotional distress

suffered as a result of the FDCPA violations.  Defendant asserts that this claim for relief

fails.

Section 1692k(a)(1) provides:

Except as otherwise provided by this section, any debt collector who fails
to comply with any provision of this subchapter with respect to any person
is liable to such person in an amount equal to the sum of--

(1) any actual damage sustained by such person as a result of such failure[.]

15 U.S.C. § 1692k(a)(1).

### 1.      Dale and Dustin Erickson

Dale Erickson claims that he experienced stress and anger after Defendant's

communication with his son.  (Supplemental Aff. of Trista Roy ("Suppl. Roy

Aff.") ¶ 4, Ex. K at 74-75, 81.)  In particular, Dale Erickson explained in part:

I answered the phone and it was Dustin.  And he said, dad, some guy from
Messerli & Kramer called, and he said that you're in big trouble, and that
you're going to jail and all of these things.  He was saying – just— I kept
saying, don't worry about it, son.  I'll take care of it.  It's none of your
business.

Then he started telling me about the—the words and stuff that were said,
and the fight that – sounded like there could have been a fight.  And I said
whatever you do, do not go over to Grand Avenue in St. Paul and meet up
with somebody and fight anybody . . . .

(*Id*. at 73.)

In support of Plaintiffs' claim for emotional distress damages to Dustin Erickson, Dustin testified that he felt humiliated, experienced anxiety, lost sleep, and was tired as a result of Defendant's conduct.  (*Id*. ¶ 5, Ex. L at 32, 42-44.)

Dale and Dustin Erickson's testimony is the only evidence supporting their claim for emotional distress damages.  Dale and Dustin Erickson do not point to any evidence to substantiate their emotional distress damages, such as loss of work or medical treatment.  While a physical manifestation of emotional distress is not always required before a plaintiff may recover, Dale and Dustin Erickson must put forth specific detail of emotional distress damages.  Here, Dale and Dustin Erickson's testimony lacks specific, substantial detail necessary to show emotional distress.  Therefore, the Court concludes that the evidence presented with respect to Dale and Dustin Erickson is insufficient to survive summary judgment and dismisses their claims insofar as they seek actual damages for emotional distress.

### 2.    Diane Erickson

Diane Erickson claims that Defendant's conduct has caused her stress and shame that has negatively impacted her Multiple Sclerosis.  (Roy Aff. ¶ 7, Ex. F (Dep. of Diane Erickson ("Diane Dep.")) at 11-14;  Suppl. Roy Aff. ¶ 3, Ex. J at 39.)  Although Diane Erickson testified that she did not seek medical treatment as a result of the phone calls, she explained:

> But it put me a couple steps back into my bed for two days because, you know, I didn't want my son to know anything about our financial problems. I was stressed out all about it.  And then that was prior to my—I got a call

before he did, and it made it just—I mean I was upset with the call I got, and then he calls after that and it made it really bad on me.

(Diane Dep. at 12.)  Diane Erickson also explained the reason she didn't seek medical treatment:

No, because . . . I'm taking—the drug I'm on, they can't do anything more than what I take.  It's called Rebif.  I take it every other night.  It's a needle I insert myself.  And I'm on antidepressant that I need to take every day to keep my level.  And anything that comes up, I get—I get down.  I go down.

I mean I—stress just kills me . . .

(*Id.*)

While the evidence of Diane Erickson's claim for emotional distress damages presents a close call on summary judgment, the Court cannot conclude that no reasonable juror could award Diane Erickson damages for emotional distress.  Even though Diane Erickson did not seek medical treatment for the stress that she alleges Defendant's calls caused her, she offers a reasonable explanation why, namely that she did not think anything more could be done considering the medications she was already taking.  In addition, Diane Erickson offered enough details of how the stress affected her to create a factual issue.  Accordingly, the Court denies Defendant's motion for summary judgment on Diane Erickson's claim for emotional distress damages and Diane Erickson will be permitted to seek such damages at trial.[8]

---

[8]     Given Diane Erickson's pre-existing condition of Multiple Sclerosis, which she testified is negatively impacted by stress, sufficient evidence has been presented at the summary judgment stage.  However, whether this claim can survive a directed verdict at trial on this record remains to be seen.

## VI.     Disputed August 2009 Phone Call

In their Amended Complaint, Plaintiffs allege that Defendant placed a call in late August 2009 that was answered by Dale Erickson.  Plaintiffs allege that during this call, Defendant accused Plaintiff of trying to get a "free ride," asked  Plaintiff if he was "some kind of loser," and told Plaintiff to "just start paying your damn bills."  (Am. Compl. ¶¶ 12-16.)

Defendant points to Plaintiffs' home phone records, including inbound calls, for late August 2009 (excluding Sundays, when Defendant's office is closed), which do not show that a call was made by Defendant in late August. (Zwilling Supp. Aff. ¶¶ 11-13 & Ex. B).  Defendant also points to evidence of its own electronic notes suggesting that this call never occurred.  (*Id*. ¶ 13, Ex. B.)

Plaintiffs do not dispute that neither Plaintiffs' telephone records nor Defendant's recordings or electronic records indicate that this late August call was made.  However, Plaintiffs maintain that a genuine issue of material fact exists as to whether Defendant called Dale Erickson in late August 2009 because evidence in the record suggests that Defendant's collection notes are incomplete and inaccurate and that Plaintiffs' telephone records are not definitive proof.  For example, Plaintiffs assert that Defendant does not record all phone conversations between its collectors and consumers and that Defendant's collection notes are not always complete or accurate.  With respect to Plaintiffs' telephone records, Plaintiffs assert that the records do not indicate that any calls were made by Defendant during the relevant time period, even when it is undisputed that Defendant made calls.

In its reply, Defendant maintains that Plaintiffs have not produced any trustworthy evidence to overcome the absence of evidence showing that a call occurred in late August. However, Defendant does not address Plaintiffs' claims with respect to the inaccuracy of the collection notes and phone records. Accordingly, the Court concludes that fact issues exist as to whether the late August 2009 phone call was made.

## VII.   Invasion of Privacy

Plaintiffs assert a claim for invasion of privacy. In *Lake v. Wal-Mart Stores, Inc.*, the Minnesota Supreme Court recognized the tort of invasion of privacy and three of the causes of action associated with it: intrusion upon seclusion, appropriation, and publication of private facts. 582 N.W.2d 231, 233-35 (Minn. 1998). Intrusion upon seclusion occurs when one "'intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person.'" *Id.* at 233 (quoting Restatement (Second) of Torts § 652B (1977)). "In the context of intrusion upon seclusion, questions about 'the reasonable person standard are ordinarily questions of fact . . . but they become questions of law if reasonable persons can draw only one conclusion from the evidence.'" *Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 745 (Minn. Ct. App. 2001) (quoting *Hougum v. Valley Mem'l Homes*, 574 N.W.2d 812, 818 (N.D. 1998)).

A claim of intrusion-upon-seclusion has three elements: (1) an intrusion, (2) that is highly offensive, and (3) into some matter in which a person has a legitimate expectation of privacy. *Swarthout*, 632 N.W.2d at 744. To establish Defendant's liability for this cause of action, Plaintiffs must demonstrate that Defendant's intrusion

22

was substantial, was of a kind that would be highly offensive to a reasonable person, and was a result of conduct to which a reasonable person would strongly object. *Id.* at 745.

Plaintiffs argue that Defendant intruded on their seclusion because Defendant continued to contact Plaintiffs after knowing that Dale and Diane Erickson were represented by an attorney. In addition, Plaintiffs assert that Defendant's communications were abusive in nature, went beyond the tolerable threshold of routine debt collection activity, and disturbed the solitude of their home. The Court concludes that questions of material fact exist on Plaintiffs' invasion of privacy claim. Whether Defendant's actions constitute highly offensive conduct to which a reasonable person would strongly object is a question of fact.

## CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.  Both Plaintiffs' Motion for Partial Summary Judgment (Doc. No. [50]) and Defendant's Motion for Partial Summary Judgment (Doc. No. [55] are **GRANTED IN PART** and **DENIED IN PART** as follows:

a.  Plaintiffs' and Defendant's motions with respect to Plaintiffs' claims under §§ 1692c(a)(2) and 1692b(6) are **DENIED**.

b.  The August 26, 2009, September 3, 2009, and September 28, 2009 phone calls do not violate §§ 1692d, 1692e, or 1692f.

c.      Plaintiffs are entitled to summary judgment with respect to their claim that Defendant violated § 1692d(1) during the September 15, 2009 phone conversation with Dustin Erickson.

d.      The parties' motions with respect to the bona fide error defense are **DENIED**.

e.      Dale and Dustin Erickson's claims for actual damages based on emotional distress are **DISMISSED**.

f.      Defendant's motion with respect to Plaintiffs' claim for invasion of privacy is **DENIED**.

Dated:  May 16, 2011                          s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge